1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11   SANDRA J. SOWUL,                )    Case No. SACV 05-00523-JTL
                                     )
12                    Plaintiff,     )
                                     )
13             v.                    )    MEMORANDUM OPINION AND ORDER
                                     )
14   JO ANNE B. BARNHART,            )
     Commissioner of Social          )
15   Security,                       )
                                     )
16                    Defendant.     )
     _____)

17

18                          **PROCEEDINGS**

19        On June 9, 2005, Sandra J. Sowul ("plaintiff") filed a Complaint

20   seeking review of the Commissioner's denial of her application for

21   supplemental security income.  On August 11, 2005, the parties filed

22   a Consent to Proceed Before United States Magistrate Judge Jennifer T.

23   Lum.  Thereafter, on December 7 , 2005, defendant filed an Answer to

24   Complaint.  On February 1, 2006, the parties filed their Joint

25   Stipulation.

26        The matter is now ready for decision.

27   ///

28   ///

**BACKGROUND**

On May 22, 2003, plaintiff filed an application for supplemental security income.  (Administrative Record ["AR"] at 40-42).  In her application, plaintiff claimed that, beginning on August 1, 2002, Hepatitis C and severe depression prevented her from working.  (AR at 52-53).  The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration.  (AR at 24-28, 30-33).  Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 38).

On November 3, 2004, the ALJ conducted a hearing in Orange, California.  (AR at 221-40).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 224-39).  Alan Boroskin, a vocational expert, also appeared but did not testify.  (AR at 221).

On December 8, 2004, the ALJ issued his decision denying benefits.  (AR at 11-15).  In his decision, the ALJ concluded that plaintiff suffered from Hepatitis C and depression, but that these impairments were not severe. (AR at 15).  Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (AR at 14).

On January 17, 2005, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision.  (AR at 7).  On April 13, 2005, the Appeals Council affirmed the ALJ's decision.  (AR at 4-6).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the Joint Stipulation:

1.   The ALJ failed to provide specific findings or analysis regarding the physical and mental demands of plaintiff's past relevant

work.

2.    The ALJ failed to properly consider the opinion of the treating physician.

3.    The ALJ failed to properly conclude that plaintiff did not have a severe mental impairment.

### STANDARD OF REVIEW

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

### DISCUSSION

A.   **Plaintiff's Mental Impairment**

Plaintiff claims that the ALJ erred in finding that she did not suffer from a severe mental impairment.  First, plaintiff notes that her treating physician assessed her with a Global Assessment of

3

Functioning[1] ("GAF") score of 30.[2]  (AR at 185).  A treating physician also encouraged plaintiff to continue with medications and after care treatment at an outpatient clinic.  (AR at 215).  Furthermore, plaintiff testified that she had been hospitalized once or twice in the past couple of years as a result of suicide ideations.  (AR at 229-30).  Finally, plaintiff notes that she testified that she sees a therapist but continues to have flashbacks and suffer from uncontrollable crying.  (AR at 226).  Plaintiff contends that these factors establish that she suffers from a severe impairment.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions."  20 C.F.R. § 404.1521(b)(3)-(4); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d

[1]  "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."  Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

[2]  A GAF score of 21 to 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

4

1  at 1290 (<u>quoting</u> <u>Yuckert</u>, 841 F.2d at 306).  The severity inquiry at
2  step two is a <u>de</u> <u>minimus</u> screening device, intended to allow the
3  Commissioner to dispose of groundless claims.  <u>Bowen v. Yuckert</u>, 482
4  U.S. 137, 153 (1987); <u>Smolen</u>, 80 F.3d at 1290.

5      The ALJ found that plaintiff's mental impairment did not
6  constitute a severe impairment.  Specifically, the ALJ found "no
7  credible, objective evidence of significant pathology, either in [sic]
8  mental or physical." (AR at 14).  First, the ALJ cites the assessment
9  of Nathan Lavid, M.D., a psychiatric consultative examiner who opined
10 that plaintiff was capable of employment and that her prognosis was
11 fair.  (AR at 12-13, 140-44).  The ALJ noted that Dr. Lavid assessed
12 plaintiff with a GAF score of 65.[3]  (<u>Id.</u>).  The ALJ also referred to
13 the opinion of State Agency physician, Paul Balson, M.D., who opined
14 that plaintiff's impairment was not severe.  (AR at 13, 150). While
15 the ALJ noted that plaintiff was diagnosed with "bad psychotic
16 depression" and a GAF score of 30, the physician rendering this
17 opinion did not examine or treat plaintiff.  (AR at 14).  Overall, the
18 ALJ gave "great weight" to the opinion of Dr. Lavid.  (<u>Id.</u>).

19     But the medical evidence suggests that plaintiff's mental
20 impairment had more than a "minimal effect" on plaintiff's ability to
21 perform work-related tasks.  Medical records indicate that over the
22 years, plaintiff has been diagnosed with bipolar disorder,
23 polysubstance abuse, depressive disorder, affective disorder,

24

25      [3]  A GAF score of 61-70 indicates "[s]ome mild symptoms
26 (e.g., depressed mood and mild insomnia ) OR some difficulty in
   social occupational, or school functioning ( e.g., occasional
27 truancy or theft within the household ), but generally
   functioning pretty well, has some meaningful interpersonal
28 relationships." <u>Diagnostic and Statistical Manual of Mental</u>
   <u>Disorders</u> 34 (4th. ed, rev. 2000).

psychosis, and post-traumatic stress disorder. (AR at 143, 150, 180, 182, 185, 198, 210, 215).   Treatment notes indicated that plaintiff showed impaired judgment and limited insight. (AR at 91).   Most recently, on August 5, 2004, a treating physician opined that her "prognosis is poor." (AR at 215). Additionally, plaintiff's treating physicians prescribed the medications Zyprexa,[4] Prozac,[5] Xanax,[6] Methandone,[7] and Risperdal[8] to treat her mental impairments.   (AR at 93, 141, 146, 180, 184, 188, 191, 196, 215).   Significantly, treating physicians assessed plaintiff with GAF scores of 25 and 30. (AR at

---

[4]   Zyprexa is "used to treat certain mental/mood conditions (schizophrenia, bipolar mania). It works by helping to restore the balance of certain natural chemicals in the brain (neurotransmitters)."  http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Zyprexa"; follow "Zyprexa Oral" hyperlink; then follow "Uses").

[5]   Prozac is "is a selective serotonin reuptake inhibitor (SSRI) used to treat depression, obsessive-compulsive disorder, panic attacks, certain eating disorders (bulimia), and a severe form of premenstrual syndrome (premenstrual dysphoric disorder or PMDD)."  http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Prozac"; follow "Prozac Oral" hyperlink; then follow "Uses").

[6]   Xanax is a "used to treat anxiety and panic disorders. It belongs to a class of medications called benzodiazepines which act on the brain and nerves (central nervous system) to produce a calming effect."  http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Xanax"; follow "Xanax Oral" hyperlink; then follow "Uses").

[7]   Methadone is "used to treat severe pain. It is also used to treat narcotic (e.g., heroin) addiction as part of an approved program."  http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Methadone"; follow "Methadone Tablet -- Oral" hyperlink; then follow "Uses").

[8]   Risperdal is used "to treat certain mental/mood disorders (schizophrenia, manic phase of bipolar disorder). This medication can help you to think clearly and function in daily life."  http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Risperdal"; follow "Risperdal Oral" hyperlink; then follow "Uses").

1   180, 185, 210).   As previously noted, a GAF score between 21 to 30
2   indicates   behavior   considerably   influenced   by   delusions   or
3   hallucinations, serious impairment in communication or judgment, or
4   the   inability   to   function   in   almost   all   areas.     Diagnostic and
5   Statistical   Manual   of   Mental   Disorders   34   (4th.   ed,   rev.   2000).
6   Notwithstanding the three low GAF scores from treating sources, the
7   ALJ only addressed one of the scores in his decision.   (AR at 14).
8   Such omission constitutes error.   The medical opinion of plaintiff's
9   treating physicians are entitled to special weight.   Reddick v.
10   Chatter, 157 F.3d 715, 725 (9th Cir. 1998).   "Even if the treating
11   doctor's opinion is contradicted by another doctor, the Commissioner
12   may not reject this opinion without providing 'specific and legitimate
13   reasons' supported by substantial evidence in the record for so
14   doing." Lester v. Chatter, 81 F.3d 821, 830 (9th Cir. 1995); see also
15   Saelee v. Chatter, 94 F.3d 520 (9th Cir. 1996).   This can be done by
16   setting   out   a   detailed   and   thorough   summary   of   the   facts   and
17   conflicting clinical evidence, stating his interpretation thereof, and
18   making findings.   Reddick, 157 F.3d at 725.   Here, the ALJ failed to
19   address a significant finding in two of the treating physicians' GAF
20   scores.

21      Defendant argues that plaintiff has not met her burden of showing
22   that   her   impairments   meet   the   12   month   durational   requirement
23   necessary   to   qualify   as   disabling.     At   the   hearing,   plaintiff
24   testified   that   she   sought   treatment   for   her   emotional   problems.
25   Specifically, plaintiff testified that she has seen therapists at
26   "Orange County Mental Health" once a week for the past year.   (AR at
27   227, 229).   While plaintiff only submitted treatment records from the
28   County of Orange California Health Care Agency from April 1, 1999 to

April 11, 1999, she testified that she "finally got into Orange County Mental Health" about a year ago, suggesting that her treatment at the facility only recently resumed.  (AR at 88-93, 228).   Plaintiff also testified that she had been hospitalized once or twice the last couple of years for suicidal thoughts. (AR at 229-31). Between July 30, 2004 and August 4, 2004, medical records indicate that plaintiff was involuntarily admitted to the Royale Therapeutic Residential Center for mental health treatment, which treatment notes show included suicidal ideation.  (AR at 179-220).  In a Psychosocial Evaluation dated July 31, 2004, plaintiff admitted to a suicide attempt by cocaine overdose a year prior to the evaluation date.  (AR at 210). As such, treatment notes comport with plaintiff's testimony that her suicide ideations span at least a one year duration.   Finally, plaintiff testified and medical records indicate that doctors regularly prescribed medications to treat her mental impairments between April 1, 1999 to August 4, 2004. (AR at 228, 93, 141, 146, 180, 184, 188, 191, 196, 215).  Thus, plaintiff appears to have met the durational requirements to qualify for a severe impairment.  The sum of these circumstances is sufficient to meet the de minimus standard that must be applied to the Step Two severity inquiry.  See Bowen, 482 U.S. at 153; Smolen, 80 F.3d at 1290.  Accordingly, in light of the foregoing, the Court concludes that substantial evidence does not support the ALJ's conclusion that plaintiff does not suffer from a severe mental impairment.

///

///

**B.   Reversal and Remand is Appropriate**

The choice whether to reverse and remand for further

administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. <u>McAlister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. <u>Id</u>; <u>see also</u> <u>Rodriquez v. Bowen</u>, 876 F.2d 759, 763 (9th Cir. 1989); <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>see</u> <u>Gamble v. Chater</u>, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, <u>see</u> <u>Schneider v. Commissioner of the Social Security Administration</u>, 223 F.3d 968, 976 (9th Cir. 2000); <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must evaluate all the evidence and determine whether it establishes a severe mental impairment. The ALJ must then determine whether the severe impairment meets or equals a listed impairment. At the step two inquiry, the ALJ must consider the combined effect of all plaintiff's impairments on plaintiff's ability to function, without regard to whether each alone was sufficiently severe. <u>See</u> <u>Smolen</u>, 80 F.3d at 1290. The ALJ must then determine whether the impairment prevents plaintiff from performing work she has performed in the past. If plaintiff cannot perform her past work, the ALJ must finally determine whether she is able to perform other work in the

national economy in light of her age, education, and work experience.[9]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: May 24, 2006

_____/s/_____
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

_____

[9]   In the Joint Stipulation, plaintiff also argues that the ALJ erred in failing (1) to provide specific findings or analysis regarding the physical and mental demands of plaintiff's past relevant work and (2) to properly consider the opinion of the treating physician.  As explained above, however, the ALJ's failure to find that plaintiff suffers from a severe mental impairment constitute sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments.  In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.